McKinney, J.,
delivered the opinion of the Court.
The complainant seeks, by this bill, to enforce a lien supl posed to exist in his favor, as vendor, upon a lot of ground situate in the town of Jamestown.
The record, presents the following state of facts :
In the year 1853, John Linder sold said lot to one Northrup, and executed to him a bond for title. Horthrup sold his equitable interest in the lot to Hildreth, and made an assignment to him of said title bond. Hildreth, afterwards, made a verbal sale of his interest in the lot to the complainant, Thompson; and the latter, on the 26th of May, 1854, sold to Maxwell and Goldston for $250, for which a note was made and delivered to'him. Shortly-afterwards, Maxwell & Gold-ston sold their interest in the lot to the defendants, Dawson & Culver.
Ho written assignment of Linden’s title bond was made to *385 complainant, on his purchase from Hildreth; but, at the request of complainant, Hildreth assigned said bond to Maxwell and Goldston, after their purchase from complainant.
By a subsequent arrangement between all the before named parties, including the complainant, it was mutually agreed that Linder, the original vendor, (whose purchase money had been paid,) should execute the deed for the lot to Dawson and Cul-ver ; and his bond for title being surrendered, he conveyed to them accordingly.
At the time of this transaction, the principal part of the purchase money due from Maxwell and Goldston to the complainant, remained unpaid; and of this fact Dawson and Cul-ver had full knowledge at the time of their purchase of the lot. Some considerable length of time after the conveyance of the lot to Dawson and Culver, Maxwell and Goldston (who were silent when said arrangement for the conveyance to defendants was entered into) failed and became insolvent; whereby the complainant was unable to collect the balance of the purchase money due from them for said lot, And, thereupon, he brought this bill to subject the lot to the satisfaction thereof, upon the assumption that a lien existed in his favor; and the Chancellor so decreed.
We think the decree is erroneous. Admitting that the vendor has a lien for the purchase money in case of the sale of an equitable estate, in like manner as the sale of legal estates; and admitting further, that, upon the doctrine of the case of Wilburn v. Spofford, 4 Sneed, 698, the transfer of the title bond to the complainant, by mere delivery, was sufficient to vest him with the equitable title, upon payment of the purchase money, as fully as if the transfer had been by a written assignment ; and, consequently, that a lien did exist in his favor •. still, we are of opinion, that, under the circumstances of the case, the complainant should be held to have waived such lien.
From all the facts of the case, it sufficiently appears, that,, at the time of the purchase of the lot by the defendants, the complainant was perfectly satisfied with the personal responsibility of Maxwell and Goldston, who were then solvent. And, *386 neither at the time of the defendant’s purchase of the lot from Maxwell and Goldston, of which complainant had full knowledge ; nor at the time when they, by his consent, procured a conveyance of the legal title from Linder, did he pretend to have any lien on the lot. But, on the contrary, his conduct and declarations were such as to induce the defendants to make the purchase, and accept the legal title, under the belief that he had surrendered all claim to the lot, and relied solely, for the payment of the purchase money, upon the solvency of Maxwell and Goldston.
All other considerations aside, it may perhaps be well doubted whether the fact that his consenting that the legal title of the defendants should be perfected, under the circumstances, without any claim or reservation of lien on his part, was not of itself a waiver of his lien. But, however this may be, to allow him to set up a lien, in view of all the facts of this case, would be to aid him in the commission of a fraud on the defendants.
We are not to be understood as holding, that the mere silence of the complainants, or omission to assert his right in express terms, would have prejudiced his lien. The ground on which we place the waiver is, that his affirmative acts and declarations in regard to the matter were sufficient to induce the belief, in the minds of the defendants, that he renounced the lien.
From the whole case, it is apparent that the idea of an existing lien on the lot did not enter the mind of the complainant, until after the failure of his immediate vendees.
The decree will be reversed, and the bill dismissed, and the cross-bill also.